Debra **WALKER**, et al., Plaintiffs,

v.

**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, et al., Defendants.**

**No. Civ.A. 385CV1210–R.**

United States District Court, N.D. Texas, Dallas Division.

May 18, 2004.

Louis J. Weber, Law Office of Louis J. Weber, Dallas, TX, pro se.

Michael M. Daniel, Laura Beth Beshara, Law Office of Michael M. Daniel, Dallas, TX, for Debra Walker, Jeanete Washington, Hazel Williams, Zelma Lang, Renita Brown, Lillie Thompson, Mary Dews.

Michael P. Lynn, Eric W. Pinker, Lynn Tillotson & Pinker, Dallas, TX, M. Brett Johnson, Thomas M. Melsheimer, Fish & Richardson, Dallas, TX, for Highlands of McKamy IV and V Community Improvement Ass'n, Ginger Lee, Preston Highlands Homeowners' Ass'n, Inc., David Beer.

Neil H. Koslowe, US Dept of Justice, Washington, DC, for Thomas H. Peebles.

Joseph G. Werner, Melissa A. Miles, Haynes & Boone, Dallas, TX, Jeffrey A. Carter, Mike McKool, Jr., McKool Smith, Charles Estee, Dallas City Attorney's Office, J. Daniel McElroy, Johnson & McElroy, Dallas, TX, for Housing Authority of City of Dallas.

Charles Estee, Dallas City Attorney's Office, Dallas, TX, for City of Dallas.

J. Daniel McElroy, Johnson & McElroy, Dallas, TX, for Cornerstone Housing Corp., Cornerstone/Cascade, Inc.

Lawrence J. Friedman, Friedman & Feiger, Eric E. Wolfgang, Law Office of Eric E. Wolfgang Dallas, TX, for Respondent.

Johnny Spencer, Dallas, TX, pro se.

Linda Hack, Dallas, TX, pro se.

Victoria M. Taft, Dallas, TX, pro se.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW—HILLCREST SITE

BUCHMEYER, Senior District Judge.

Before this Court is DHA's Motion for Approval of Public Housing Site—Hillcrest Road (filed May 14, 2002). This court, having considered the motion, the responses of other parties, the evidence presented at trial, the entire record in the case, the applicable authorities, the briefs filed by the parties, and the oral and written arguments of counsel, makes the following findings of fact and conclusions of law.

### I. FINDINGS OF FACT

1. Ann Lott, President and Chief Executive officer of the Dallas Housing Authority ("DHA"), testified that since the Fifth Circuit's decision in this case in March 1999, she has believed that DHA cannot select public housing sites based on race. The court finds that testimony to be credible, and there is no direct or circumstantial evidence to the contrary. See Transcript, December 10, 2003, at 4:5–9 [hereinafter "1 Tr."].

2. Ms. Lott testified that shortly after the Fifth Circuit's decision in March 1999, DHA's employees were advised that the use of race in evaluating possible public housing sites was absolutely prohibited. The court finds that testimony to be credible, and there is no direct or circumstantial evidence to the contrary. 1 Tr. 4:10–15.

3. Ms. Lott testified that DHA has no formal or informal policy or directive that requires or allows DHA employees to use race as a basis for evaluating potential public housing sites. The court finds that testimony to be credible, and there is no direct or circumstantial evidence to the contrary. 1 Tr. 4:10–25, 5:1–4.

4. Ms. Lott testified that, since March 1999, DHA has not limited its search for public housing sites to predominantly white areas, but instead has searched for and considered potential sites throughout the City of Dallas, both inside and outside predominantly white areas. The court finds that testimony to be credible, and there is no direct or circumstantial evidence to the contrary. 1 Tr. 5:9–12.

5. Ms. Lott testified that DHA has acquired public housing outside predominantly white areas since March 1999. The court finds that testimony to be credible, and there is no direct or circumstantial evidence to the contrary. 1 Tr. 5:9–16.

6. Ms. Lott testified that, since March 1999 or shortly thereafter, DHA's practice has been to select public housing sites, without regard to race, that meet the requirements of the court's Order Granting Plaintiffs' March 15, 2001, Motion for Revised Remedial Order for Site Selection and Public Housing Development, that are adequate to accommodate the number of units proposed, that have utilities available, where there are no adverse environmental conditions or health or safety hazards, and where social, recreational, educational, commercial, and health facilities and services and job opportunities are available—in short, as she put it, "a nice place to live." The court

finds that testimony to be credible, and there is no direct or circumstantial evidence to the contrary. 1 Tr. 6:5–14; Transcript, December 18, 2003, at 9:7–17 [hereinafter "2 Tr."].

7. Ms. Lott testified that race was not a factor in the 2001 selection of the Hillcrest Site, and that former DHA employee Reginald Williams evaluated the Hillcrest Site by looking at the HUD guidelines. The court finds that testimony to be credible, and there is no direct or circumstantial evidence to the contrary. 1 Tr. 5:17–25, 6:1–14, 27:18–20.

8. Mr. Williams testified that he was told to assess the Hillcrest Site according to the HUD site neighborhood standards and did so without regard to race. The court finds that testimony to be credible, and there is no direct or circumstantial evidence to the contrary. 2 Tr. 6:7–11, 7:21–24.

9. Ms. Lott testified that DHA considered for possible housing construction five sites that DHA already owned, including two purchased under the previous race-conscious criteria, one of which was the Hillcrest Site. The McCallum Site, the other site bought under the race-conscious remedial order and considered for possible construction, was sold by DHA due to power lines that made it undesirable for housing construction. The court finds that testimony to be credible, and there is no direct or circumstantial evidence to the contrary. 1 Tr. 7:6–7, 9:20–10:03.

10. Ms. Lott testified that she alone made the decision in 2001 to develop public housing on the Hillcrest Site. The court finds that testimony to be credible, and there is no direct or circumstantial evidence to the contrary. 1 Tr. 5:17–23.

11. Ms. Lott testified that in 2001 she made the decision to build public housing on the Hillcrest Site because it meets HUD standards and the requirements imposed by the court for site selection, and because the Site is "a nice place to live" and "an excellent location for housing." The court finds that testimony to be credible, and there is no direct or circumstantial evidence to the contrary. 1 Tr. 11:2–9, 12:1–3.

12. Tim Lott, a witness called by the Homeowners, testified that there is not a better public housing site in Dallas than the Hillcrest Site. The court finds that testimony to be credible, and there is no direct or circumstantial evidence to the contrary. 2 Tr. 14:20–24.

13. Ms. Lott testified that racial discrimination was not a motivating factor in her 2001 decision to develop housing on the Hillcrest Site and that race played no part in that decision. The court finds that testimony to be credible, and there is no direct or circumstantial evidence to the contrary. 1 Tr. 3:22–25, 4:1–4.

14. The Homeowners do not contest the suitability of the Hillcrest Site for housing.

15. DHA's principal investigators in the 2001 evaluation of the Hillcrest Site were not asked to evaluate, and did not evaluate, whether the Site was in a predominantly white area. The court finds that testimony to be credible, and there is no direct or circumstantial evidence to the contrary. 1 Tr. 29:3–5, 32:20–21.

16. Ms. Lott testified that she would have decided to build a public housing site on the Hillcrest Site regardless of whether it was situated in a "predominantly white area," as long as it met both HUD's and the court's requirements. The court finds that testimony to be credible, and there is no direct or circumstantial evidence to the contrary. 1 Tr. 2–9, 12:1–2, 15:1–7.

17. There is no court order in effect that classifies the Homeowners or any other individual group on account of their race,

and there was no such order in effect when DHA made its 2001 decision to build public housing on the Hillcrest Site.

18. Evidence at trial in 1996 failed to support the conclusion that DHA's selection of the Hillcrest Site lowered the Homeowners' property values.

19. There is no evidence that DHA's present intention to build on the Hillcrest Site adversely affects the Homeowners' property values or that the actual construction of public housing on the Site will adversely affect those values.

Based on the foregoing, this Court finds that:

20. DHA's site selection policy is not based on any racial consideration and has not been based on any racial consideration since March 1999.

21. DHA's site selection practice is not based on any racial consideration and has not been based on any racial consideration since March 1999.

22. DHA's present intention to build public housing on the Hillcrest Site is not based on any racial consideration.

23. DHA's site selection policy has not caused and will not cause the Homeowners' neighborhood to adjoin a public housing site that was selected by using a race-conscious standard, and the construction and occupancy of public housing on the Site will not cause the Homeowners' neighborhood to adjoin a public housing site that was selected by using a race-conscious standard.

24. DHA's site selection practice has not caused and will not cause the Homeowners' neighborhood to adjoin a public housing site that was selected by using a race-conscious standard, and the construction and occupancy of public housing on the Site will not cause the Homeowners' neighborhood to adjoin a public housing

site that was selected by using a race-conscious standard.

25. DHA's present intention to build public housing on the Hillcrest Site will not cause the Homeowners' neighborhood to adjoin a public housing site that was selected by using a race-conscious standard, and the construction and occupancy of public housing on the Site will not cause the Homeowners' neighborhood to adjoin a public housing site that was selected by using a race conscious standard.

26. DHA's current site selection policy, which has been in effect since the Fifth Circuit's 1999 decision, does not classify and has not classified the Homeowners according to race.

27. DHA's current site selection practice, which has been in effect since the Fifth Circuit's 1999 decision, does not classify and has not classified the Homeowners according to race.

28. DHA's current site selection policy, which has been in effect since the Fifth Circuit's 1999 decision, has not resulted and will not result in the selection of public housing sites based on a race-conscious standard.

29. Since the Fifth Circuit's 1999 decision, DHA's public housing site selection policy has been race neutral and does not bear more heavily on one race than another.

30. Since the Fifth Circuit's 1999 decision, DHA's public housing site selection practice has been race neutral and does not bear more heavily on one race than another.

31. DHA's current site selection policy does not and will not bear more heavily on one race than another.

32. Since the Fifth Circuit's 1999 decision, DHA's site selection policy has not

restricted new public housing to predominantly white areas.

33. Since the Fifth Circuit's 1999 decision, DHA's site selection practice has not restricted new public housing to predominantly white areas.

34. An intent to discriminate on the basis of race is not a substantial or motivating factor in DHA's current site selection policy or practice.

35. An intent to discriminate on the basis of race is not a substantial or motivating factor in DHA's present intention to build public housing on the Hillcrest Site, and, in fact, was not a factor at all.

36. An intent to discriminate on the basis of race is not a substantial or motivating factor in DHA's current intention to build public housing on the Hillcrest Site.

37. DHA's site selection policy since March 1999 has been guided by valid concerns relating only to the livability of housing sites and compliance with this court's amended race-neutral orders.

38. DHA's site selection practice since March 1999 has been guided by valid concerns relating only to the livability of housing sites and compliance with this court's amended race-neutral orders.

39. DHA's present intention to build public housing on the Hillcrest Site is guided by valid concerns relating only to the livability of housing sites and compliance with this court's amended race-neutral orders.

40. DHA's present intention to build public housing on the Hillcrest Site does not have a discriminatory effect, and the construction and occupancy of public housing on the Site will not have a discriminatory effect.

41. DHA's present intention to build public housing on the Hillcrest Site does not have the effect of putting public housing only in predominantly white areas and is not part of a pattern of choosing sites only in predominantly white areas, and the construction and occupancy of public housing on the Site will not have the effect of putting public housing only in predominantly white areas.

42. DHA's 2001 decision and its present intention to build public housing on the Hillcrest Site is not traceable to the "predominantly white area" site selection criterion.

43. DHA's 2001 decision and its present intention to build public housing on the Hillcrest Site is a function of the livability of the Site. DHA's decision is clearly explainable by their finding that the Site is an excellent location for housing of any description, public or private. DHA's 2001 decision to build on the Hillcrest Site therefore is not a continuation of the pre–1999 "predominantly white area" policy. DHA's decision in 2001 to build public housing on the Hillcrest Site was based on legitimate nondiscriminatory reasons. The Hillcrest Site meets HUD's and the court's requirements and is the best site available in the entire city. DHA's decision would have been reached regardless of any racially discriminatory motive, purpose, or intent.

44. Even though DHA purchased the Hillcrest Site while complying with this court's pre–1999 order, DHA would have purchased the Hillcrest Site absent the "predominantly white area" requirement.

45. DHA would have decided to build public housing on the Hillcrest Site absent the "predominantly white area" requirement.

46. DHA's 2001 decision to build public housing on the Hillcrest Site creates no racial classification applicable to the Homeowners, and the construction and occupancy of public housing on the Site will

create no racial classification applicable to the Homeowners.

47. DHA's 2001 decision to build public housing on the Hillcrest Site does not perpetuate a prior *de jure* express racial classification applicable to the Homeowners, and the construction and occupancy of public housing on the Site will not perpetuate a prior *de jure* express racial classification applicable to the Homeowners.

48. DHA has dismantled its prior *de jure* discriminatory site selection policy and practice.

49. If any of the foregoing Findings of Fact may be more properly deemed Conclusions of Law, they are hereby incorporated by reference into the Conclusions of Law.

## II. CONCLUSIONS OF LAW

1. DHA's 2001 decision to build public housing on the Hillcrest Site will not produce disproportionate effects along racial lines, and DHA did not act with a racially discriminatory intent or purpose in making its decision to commence construction on the Hillcrest Site. The Supreme Court has held that, "official action will not be held unconstitutional simply because it results in a racially disproportionate impact.... Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights, Ill. v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 264–65, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); *City of Cuyahoga Falls, Ohio v. Buckeye Community Hope Foundation*, 538 U.S. 188, 194, 123 S.Ct. 1389, 155 L.Ed.2d 349 (2003). The construction of public housing will not violate the Homeowners' right to equal protection.

2. Even if constructing public housing on the Hillcrest Site was found to have a present racially disproportionate effect, race is not a substantial or motivating factor in DHA's 2001 decision to build on the Hillcrest Site. "Once racial discrimination is shown to have been a 'substantial' or 'motivating' factor behind enactment of the law, the burden shifts to the law's defenders to demonstrate that the law would have been enacted without this factor." *Hunter v. Underwood*, 471 U.S. 222, 228, 105 S.Ct. 1916, 85 L.Ed.2d 222 (1985). Homeowners have not shown that racial discrimination was a substantial or motivating factor behind DHA's 2001 decision to build housing on the Hillcrest Site.

3. Even if Homeowners had shown that racial discrimination was a substantial or motivating factor behind DHA's 2001 decision to build housing on the Hillcrest Site, DHA has shown by a preponderance of the evidence that they would have chosen to build on the Hillcrest Site absent any racial motivation. DHA in 2001 chose to build on the Hillcrest Site because there is no better place in Dallas on which to build a 40–unit apartment complex.

4. DHA's 2001 decision to build on the Hillcrest Site does not racially classify the Homeowners, and the decision does not cause the Homeowners' neighborhood to adjoin a public housing project whose site was determined by a race-conscious standard. Construction on the Hillcrest Site does not produce disproportionate effects along racial lines.

5. Absent evidence that construction on the site produces racially disproportionate effects, there is no need to consider whether racial discrimination is a proximate or "but-for" cause of DHA's decision to build on the Hillcrest Site. *See Freeman v. Pitts*, 503 U.S. 467, 491, 112 S.Ct. 1430, 118 L.Ed.2d 108 (1992) ("[T]he district court may determine that it will not order further remedies in the area of student assignments where racial imbalance is not

traceable, in a proximate way, to constitutional violations.").

6. Even if the construction of housing on the Hillcrest Site was found to produce a present racially disproportionate effect, racial discrimination was not a proximate or "but-for" factor in DHA's decision to build housing on the Hillcrest Site. DHA in 2001 chose to build on the Hillcrest Site because there is no better place in Dallas on which to build a 40–unit apartment complex.

7. DHA's current site selection practice comports with the Fifth Circuit's suggestion that sites be "selected by means of a nonracial criteria." *Walker v. City of Mesquite*, 169 F.3d 973, 988 (5th Cir. 1999).("[T]his opinion does not preclude the construction ... of additional public housing if sites are selected by means of nonracial criteria."). DHA now selects sites for the construction of public housing in a non-race conscious manner, and the Hillcrest Site was selected for housing construction based on nonracial criteria.

8. Homeowners originally filed suit to enjoin construction of public housing projects on the Hillcrest and McCallum Sites, contending that this court's remedial order was "not narrowly constructed because it require[d] that the new units be constructed in predominantly white areas." *Walker*, 169 F.3d at 978. The Fifth Circuit examined "whether the remedial order's requirement that new public housing units be built or acquired in 'predominantly white areas' is narrowly tailored to remedy the vestiges of past discrimination and segregation within Dallas's public housing programs." *Id.* at 981. In that opinion, the Fifth Circuit instructed that a race-neutral remedy should be employed prior to resorting to a race-conscious one.

9. Homeowners now rely on *U.S. v. Fordice*, 505 U.S. 717, 112 S.Ct. 2727, 120 L.Ed.2d 575 (1992), to argue that DHA's decision to build public housing on the Hillcrest Site is tainted because it is traceable to the prior race-conscious remedial order. To the extent that *Fordice* applies outside the education context, it would require findings that the pre–1999 "predominantly white" selection policy and practice "continue to have segregative effects" and that those present segregative effects "flow from policies rooted in the prior system." *Fordice*, 505 U.S. 717, 730 & 731, 112 S.Ct. 2727, 120 L.Ed.2d 575 (1992). The prior race-conscious criteria, however, was never shown to have segregative effects. Rather, the previous remedial order was evaluated as a means to desegregate Dallas's public housing programs. Likewise, the current race-neutral selection criteria has not been shown to have segregative effects.

10. Even if *Fordice* did apply, DHA's 2001 decision to build on the Hillcrest Site does not perpetuate the earlier race-conscious selection criteria, and the 2001 decision did not flow from policies rooted in the prior system. The Hillcrest Site is simply a desirable housing location by current, nonracial criteria.

11. DHA's initial acquisition of the Hillcrest Site pursuant to a race-conscious selection criterion does not call to question the constitutionality of DHA's 2001 decision to build on the Site. "[P]ast discrimination cannot, in the manner of original sin, condemn governmental action that is not itself unlawful." *City of Mobile, Ala. v. Bolden*, 446 U.S. at 55, 74, 100 S.Ct. 1490, 64 L.Ed.2d 47 (1980). DHA's 2001 decision to build on the Hillcrest Site was not unlawful.

12. DHA no longer employs the "predominantly white" selection criteria. DHA's 2001 decision to build housing on the Hillcrest Site was based on evaluation using nonracial criteria.

787

13. DHA has conducted nonracial analyses of the suitability of various housing sites, and the Hillcrest Site has been chosen for construction due to its desirability according to HUD site selection standards.

14. If any of the foregoing Conclusions of Law may be more properly deemed Findings of Fact, they are hereby incorporated by reference into the Findings of Fact.

## III. CONCLUSION

DHA in 2001 selected the Hillcrest Site for public housing construction through use of nonracial criteria. **DHA's Motion for Approval of Public Housing Site—Hillcrest Road is hereby GRANTED.**

**IT IS SO ORDERED.**